## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**RICARDO TULL,**

     **Petitioner,**

**v.**                           **Case No. 8:16-cv-3417-MSS-TGW**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

     **Respondent.**
_____/

## O R D E R

This cause is before the Court on Ricardo Tull's timely-filed *pro se* amended petition for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 15) Respondent filed a response in opposition. (Doc. 17) Tull filed a reply. (Doc. 30) Upon consideration of the amended petition, the response, and the reply, and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, it is **ORDERED** that the petition is **DENIED**:

## BACKGROUND

The State charged Tull and his two co-defendants with three counts of robbery with a firearm (counts one, three, and four) and one count of criminal mischief (count two). (Doc. 11 Ex. 1) Tull entered an open guilty plea. (Doc. 11 Ex. 6 at 97-116, Ex. 7) For the counts of robbery with a firearm, the state trial court sentenced Tull to concurrent terms of 20 years in prison followed by 10 years of probation. (Doc. 11 Ex.

1

9) The sentence for count one included a 10-year minimum mandatory term. (Doc. 11 Ex. 9) The state trial court sentenced Tull to time served on the count of criminal mischief. (Doc. 11 Ex. 9)

Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that no meritorious appellate issues existed. (Doc. 11 Ex. 10) Tull filed a *pro se* brief. (Doc. 11 Ex. 11) The state appellate court *per curiam* affirmed the convictions and sentences. (Doc. 11 Ex. 12)

Tull filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 11 Ex. 15) The state court summarily denied all but one claim. (Doc. 11 Exs. 16, 17) After conducting an evidentiary hearing on the remaining claim, the state court entered a final order denying Tull's postconviction motion. (Doc. 11 Exs. 18, 19) The state appellate court *per curiam* affirmed the denial of relief. (Doc. 11 Ex. 20)

## STANDARDS OF REVIEW

### I. The AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). When a state appellate court issues a silent affirmance,

"the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## II.      Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Tull must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Tull must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Because he pleaded guilty, Tull "must show that there is

4

a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted). "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.' " *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (quoting *Johnson v. Sec'y, DOC*, 643 F.3d 907, 911 (11th Cir. 2011)). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### EXHAUSTION OF STATE REMEDIES; PROCEDURAL DEFAULT

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly

presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

A petitioner's failure to follow the state's established procedures for proper presentation of a claim will result in a procedural default of that claim. *See Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (stating that a procedural default arises "where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred"). Accordingly, a state court's "adequate and independent finding of procedural default will bar federal habeas review of the federal claim . . . ." *Harris v. Reed*, 489 U.S. 255, 262 (1989); *see also Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). To excuse a procedural default on federal habeas, a petitioner must show either (1) cause for the default and actual prejudice from the alleged violation of federal law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## DISCUSSION

### I.   Introduction: Tull's Plea

On May 24, 2010, Tull rejected the State's plea offer for 10 years in prison followed by five years of probation. (Doc. 11 Ex. 2 at 5-6) Trial proceedings began on June 1, 2010. The court announced that Tull and his two co-defendants had decided to go to trial and that any plea from then on would be an open plea. (Doc. 11 Ex. 6 at

6-7) Before completing jury selection, all three co-defendants indicated they wished to change their pleas. The court reiterated that any plea would be an open plea. (Doc. 11 Ex. 6 at 96) The prosecutor verified that if Tull entered an open plea, the State would not seek to designate him as a prison releasee reoffender ("PRR"); the state trial court explained that a PRR designation would have carried a mandatory life sentence. (Doc. 11 Ex. 6 at 99) The state trial court identified the charges and the maximum possible term of life imprisonment. (Doc. 11 Ex. 6 at 102-03) Tull confirmed his decision to plead guilty rather than continue with trial. (Doc. 11 Ex. 6 at 103)

The state trial court next explained to Tull the day-for-day nature of the minimum mandatory sentence on count one. (Doc. 11 Ex. 6 at 104-05) Tull stated that he understood the minimum mandatory term. (Doc. 11 Ex. 6 at 105) Tull also told the state trial court that he understood he was waiving his rights to continue with the jury trial, to face and confront his accusers, to summon witnesses in his defense, and to testify in his defense. (Doc. 11 Ex. 6 at 105-08) Tull said that he was satisfied with his counsel's advice and services. (Doc. 11 Ex. 6 at 106-07) Tull verified that he wanted to enter a plea. (Doc. 11 Ex. 6 at 107-08) Tull did not challenge the prosecutor's factual basis for the charges. (Doc. 11 Ex. 6 at 111-12)

Since a guilty plea waives non-jurisdictional defects, a petitioner who enters a plea can only challenge the knowing and voluntary nature of the plea. Entry of a plea thus precludes most challenges to the conviction. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (holding that, after a criminal defendant enters a guilty plea, he "may not thereafter raise independent claims relating to the deprivation of constitutional rights

7

that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within" the range of competence for criminal attorneys); *see also United States v. Broce*, 488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.").

The record supports the conclusion that Tull knowingly and voluntarily entered his plea. "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea will be upheld on federal review.' " *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

Tull agreed he was entering an open plea, was informed of the maximum possible sentence and the applicable minimum mandatory sentence, told the state trial

court that he understood the rights he was waiving, and expressed his satisfaction with counsel. (Doc. 11 Ex. 6 at 103-12) Tull's statements at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true."); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.").

## II.   Ground One

In Ground One, Tull claims that (1) the prosecution committed fraud on the state trial court by mispresenting evidence in the record; (2) his sentence is illegal under Florida law; (3) the state trial court erred in denying his motion to dismiss when there was no probable cause to arrest him; (4) the State's charging document was not based on statements from material witnesses; (5) his plea was involuntary because of counsel's misadvice about the sentence he would receive; (6) his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004); and (7) his sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Tull presented these claims to the state appellate court in his *pro se* brief. (Doc. 11 Ex. 11)

The first three sub-claims of Ground One are not cognizable on federal habeas review because Tull alleges no federal constitutional violations. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (stating that federal habeas relief is unavailable for errors of

state law); *Wainwright v. Goode*, 464 U.S. 78, 83-84 (1983) (providing that a federal court may intervene in the state judicial process only to correct wrongs of a constitutional dimension); *Smith v. Phillips*, 455 U.S. 209, 221 (1982) (stating that federal habeas relief is available only when a conviction is obtained in violation of the United States Constitution).

Tull cannot obtain federal habeas relief on the remaining four sub-claims. Respondent asserts that Tull's claims are procedurally defaulted. Respondent contends that the claims were not properly raised on appeal because they were not preserved for review. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court has adjudicated the claim on the merits *in the absence of any indication or state-law procedural principles to the contrary*." *Richter*, 562 U.S. at 99 (emphasis added). The presumption of a merits adjudication may be overcome "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99-100.

The Florida Rules of Appellate Procedure limit the issues that may be raised by an appellant who entered a guilty plea. An appellant who pleaded guilty may appeal the trial court's prior dispositive order, if he has expressly reserved the right to do so. Fla. R. App. P. 9.140(b)(2)(A)(i). Otherwise, an appellant who pleaded guilty may only appeal the trial court's lack of subject matter jurisdiction; a violation of the plea agreement, if preserved by a motion to withdraw plea; an involuntary plea, if preserved by a motion to withdraw plea; a sentencing error, if preserved; or "as otherwise provided by law." Fla. R. App. P. 9.140(b)(2)(A)(ii).

10

Tull did not object or expressly reserve the right to appeal any matters when he changed his plea or when he was sentenced. (Doc. 11 Ex. 6 at 97-116, Ex. 8) Nor is there any indication that he filed a motion to withdraw plea or a motion to correct a sentencing error. Accordingly, the Court concludes that it is more likely that the state appellate court applied its established procedural rules to find Tull's claims barred from review due to a lack of preservation, rather than adjudicating the claims on the merits. *See Richter*, 562 U.S. at 99-100; *see also Kight v. Singletary*, 50 F.3d 1539, 1545 (11th Cir. 1995) (concluding that when the state court denied relief without explanation and the claim was procedurally barred under state law, the "most reasonable" assumption was that the state court enforced its procedural bar); *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) (providing that when a state court does not issue a decision, a court on federal habeas review "may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case.").

Tull's failure to properly raise his claims in the state appellate court results in a procedural default of the claims. *See Harris v. Reed*, 489 U.S. at 262. Tull has not shown the applicability of an exception to excuse the default. *See id.* Alternatively, even assuming the state appellate court ruled on the merits, Tull is not entitled to federal habeas relief.

In sub-claim (4), Tull asserts that the charging information was based on improper hearsay, resulting in a federal due process violation. This allegation of a defect in the proceedings before the entry of Tull's plea is waived by the plea. *See Tollett*, 411 U.S. at 267. Further, a claim alleging a defect in a state charging document will

11

only warrant federal habeas relief if the defect was so severe as to deprive the state court of jurisdiction. *See DeBenedictis v. Wainwright*, 674 F.2d 841, 842 (11th Cir. 1982). Tull does not contend that the state court lacked jurisdiction over his case because of any alleged defect in the charging information. And Florida's circuit courts have jurisdiction over all felonies and misdemeanors that arise from the same circumstances as charged felonies. *See* Art. V, § 20(c)(3), Fla. Const. (stating that circuit courts have "exclusive original jurisdiction . . . [o]f all felonies and of all misdemeanors arising out of the same circumstances as a felony which is also charged . . . ."); § 26.012(2)(d), Fla. Stat. (same).[1] Accordingly, Tull cannot obtain relief on sub-claim (4).

In sub-claim (5), Tull alleges that his plea was involuntary because counsel misled him about the sentence he would receive. Tull entered an open plea, but he asserts that he "pled to the Court believing, based on [the] representation of his attorney, that he was to receive the benefit" of the State's earlier offer of 10 years in prison followed by five years of probation. (Doc. 15 at 6)

The record refutes Tull's claim. The record shows that Tull knowingly and voluntarily entered an open plea without an agreed-upon sentence. Tull also signed a plea form stating that he was agreeing to an "open plea to the court" and that "no one has promised me anything upon which I have relied in order to influence me to enter this plea." (Doc. 11 Ex. 7) Further, Tull fails to show that counsel's alleged inaccurate

---

[1] The felony counts of robbery with a firearm (counts one, three, and four) arose out of the same circumstances as the misdemeanor count of criminal mischief (count two). (Doc. 11 Ex. 6 at 108-11)

prediction of his sentence caused his plea to be involuntary. *See Johnson v. Massey*, 516 F.2d 1001, 1002 (5th Cir. 1975)[2] (stating that an attorney's good-faith but erroneous prediction of a sentence does not render a guilty plea involuntary); *see also United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (affirming the denial of a defendant's motion to withdraw his plea where, although counsel incorrectly predicted the length of the sentence, the defendant was informed of the possible sentence). Tull thus fails to show that the state appellate court unreasonably rejected his involuntary plea claim.

In sub-claims (6) and (7), Tull argues that his sentence violates *Apprendi* and *Blakely* because the facts establishing his guilt, as well as the facts "legally essential to his sentence" were not proven beyond a reasonable doubt. (Doc. 15 at 6). *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Blakely* clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." 542 U.S. at 303.

Tull has not shown that his sentence violates *Apprendi* or *Blakely* because his sentence was not increased beyond the prescribed statutory maximum. He pleaded guilty to three counts of robbery with a firearm under § 812.13(1) and (2)(a), Fla. Stat.

---

[2] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

(Doc. 11 Exs. 1, 7, 9) The 20-year prison term he received for each charge falls below the statutory maximum penalty of life in prison. § 812.13(2)(a), Fla. Stat.[3] Tull does not identify, nor does the record reveal, any enhancement to his sentence based on a judicial finding of fact. He does not show that the state court's denial of his claim was unreasonable. Tull is not entitled to relief on Ground One.

## III.   Ground Two

Tull argues that counsel was ineffective in misleading him about the status of his motion to dismiss and in failing to inform him that he could reserve the right to appeal the denial of the motion. Tull contends that counsel's failure affected the voluntariness of his plea.

Counsel moved to dismiss the charges under Florida Rule of Criminal Procedure 3.190(c)(4) and the State filed a traverse. (Doc. 11 Exs. 3, 4) Tull argued in his postconviction motion that he learned after appealing that the state court had not entered an order on his motion to dismiss, contrary to counsel Walter Lopez's statement to him that the court had denied the motion. (Doc. 11 Ex. 15 at 4) The state court denied Tull's claim that counsel was ineffective in misleading him about the status of his motion to dismiss (Doc. 11 Ex. 16 at 4) (court's record citations omitted):

> The Court finds on May 25, 2010, Defendant, through counsel, filed a motion to dismiss. The Court finds on May 25, 2011 [sic], the State filed its traverse.[4] The Court further finds on May 25, 2010, the Court orally

---

[3] Section 775.087(2)(a)(1), Fla. Stat, required imposition of a 10-year minimum mandatory term on count one for actual possession of firearm. Tull admitted to actual possession when he entered the plea. (Doc. 11 Ex. 6 at 109, 112)

[4] The State's traverse was filed on May 25, 2010. (Doc. 11 Ex. 4)

denied the motion to dismiss. The Court finds although the record does not contain a written order on the motion to dismiss, the judge did rule on the motion to dismiss in court on May 25, 2010. Therefore, the Court finds Mr. Lopez did not misadvise Defendant about the status of the motion to dismiss as the Court did orally deny the motion to dismiss on May 25, 2010. Consequently, the Court finds Defendant's plea was voluntarily entered and Defendant cannot prove that Mr. Lopez acted deficiently when he accurately advised him prior to entering the plea that the motion to dismiss had been denied. As such, no relief is warranted upon this portion of claim one.

Tull does not show that counsel performed deficiently or misled him about the status of the motion to dismiss. Tull now concedes that "the record reflects that the State trial court orally denied the Motion to Dismiss[.]" (Doc. 15 at 7) Tull therefore fails to demonstrate that the state court unreasonably denied his ineffective assistance claim.

Tull also contends that counsel misadvised him about his ability to appeal the trial court's denial of his motion to dismiss. He claims that counsel failed to advise him that "he could reserve the right to appeal a dispositive issue and [he] therefore never asked to reserve the Motion to Dismiss for appeal." (Doc. 15 at 8) The state court summarily denied Tull's claim (Doc. 11 Ex. 17 at 3-4) (court's record citations omitted):

> In claim one, Defendant alleges involuntary plea and ineffective assistance of counsel when counsel misled Defendant regarding the status of the motion to dismiss. Specifically, he alleges prior to entering the plea, his counsel advised him that the Court denied the motion to dismiss and there was no way to appeal the denial. He alleges his counsel misled him to believe he could not appeal the denial of the motion to dismiss, but he has since learned that such denials are appealable. He alleges he involuntarily waived his defense of the motion to dismiss and any appealable rights he had on the denial because of counsel's

15

misadvice. He alleges he should be permitted an opportunity to appeal the order denying relief.

. . .

In its response, the State, relying on rule 3.190(c)(4), asserts even if Defendant had appealed the Court's denial of the motion to dismiss, the denial would have been affirmed on appeal because the State filed a valid traverse asserting there were material facts in dispute. The State asserts there was no basis for Mr. Lopez to appeal the denial of the motion to dismiss based on the State's traverse. Therefore, the State asserts Defendant failed to prove prejudice.

In his reply, Defendant does not address claim one. After reviewing the allegations, the State's response, Defendant's reply, the court file, and the record, the Court finds the State's response persuasive. Therefore, the Court finds a motion to dismiss under rule 3.190(c)(4) must be denied if the State files a traverse that, with specificity, denies under oath the material fact or facts alleged in the motion to dismiss. *See* Fla. R. Crim. P. 3.190(c)(4) (2010). The Court finds on May 25, 2010, the State filed the "State of Florida traverse and memorandum of law" asserting there were material facts in dispute. The Court finds because the State's traverse denied with specificity, under oath, the material fact or facts alleged in the motion to dismiss, the Court properly denied the motion to dismiss. Consequently, the Court finds even if Mr. Lopez had sought review of the Court's denial of the motion to dismiss, the Court's denial would have been affirmed based on the valid traverse. As such, Defendant cannot prove prejudice and no relief is warranted upon this portion of claim one.

Tull has not shown that the state court unreasonably rejected his ineffective assistance claim. To prevail on federal habeas, Tull must show that counsel's alleged failure to advise him that he could reserve the right to appeal the denial of his motion to dismiss rendered his plea involuntary. *See Stano*, 921 F.2d at 1141. But Tull does not explain how counsel's alleged failure affected the knowing and voluntary nature of his plea. Moreover, the state court's decision turns on a state law question—whether a challenge to the trial court's ruling would have been meritorious under Florida law

16

governing the standard for a motion to dismiss. The state court determined that such a challenge would have failed.

This Court must defer to the state court's determination of the relevant underlying state law question. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[The United States Supreme Court has] repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance— even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (stating that because the state court found that an objection based on state law would not have succeeded, counsel "was not ineffective for failing to make that objection"). Under these circumstances, Tull has not shown that he was prejudiced by counsel's alleged failure to tell him that he could reserve the right to appeal the denial of the motion to dismiss.

Tull does not demonstrate that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Two.[5]

---

[5] To the extent Tull intends to argue that the state postconviction court erred in not conducting an evidentiary hearing on this ground, he cannot obtain federal habeas relief. A claim about the procedures used in state postconviction proceedings is not cognizable on federal habeas review because it raises no constitutional challenge to the validity of Tull's conviction. *See*

## IV.    Ground Three

Tull contends that counsel was ineffective for failing to inform him that the status of plea negotiations changed when the trial court announced that it would only accept an open plea. As addressed about one week before trial, Tull rejected the State's plea offer of 10 years in prison followed by five years of probation. (Doc. 11 Ex. 2 at 5-6) However, on June 1, 2010, the day trial was scheduled to begin, Tull and his co-defendants were still considering whether to plead. The trial transcript shows that counsel indicated to the court he needed to talk to Tull. (Doc. 11 Ex. 6 at 4-5) The transcript then shows that the matter was "temporarily passed," after which the following exchanges occurred (Doc. 11 Ex. 6 at 5-7):

THE COURT: Okay. What are we doing?

M[R]. LOPEZ: My guy is going to trial.

THE COURT: What do we know?

THE BAILIFF: One said yes, they all want to go.

THE COURT: Okay. Get them all dressed.

. . .

And, counsel, don't leave just yet.

Get them dressed and have them brought out.

---

*Anderson v. Sec'y, Dep't of Corr.*, 462 F.3d 1319, 1330 (11th Cir. 2006) ("[T]he state court's failure to hold an evidentiary hearing on a petitioner's 3.850 motion is not a basis for federal habeas relief."); *see also Carroll*, 574 F.3d at 1365 ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—*i.e.*, the conviction itself—and thus habeas relief is not an appropriate remedy.").

(Pause).

THE COURT: Steve, do any of them need an interpreter?

THE BAILIFF: No, sir, none of them need an interpreter.

THE COURT: Let me interrupt everybody for just a minute. All three defendants are present, Hommy Rodriguez-Santana, Ricardo Tull and Onix Vega and their counsel. I'm told that each of these three defendants has made the decision not to plead and proceed to trial; is that correct, Mr. Rodriguez, on behalf of your client Rodriguez-Santana?

MR. RODRIGUEZ: Is that correct, Mr. Santana?

DEFENDANT SANTANA: Yes.

MR. RODRIGUEZ: It is correct, Your Honor.

THE COURT: Is that the status, Mr. Lopez, on behalf of your client Mr. Tull?

M[R.]: LOPEZ: Yes, Your Honor.

THE COURT: And is that Mr. Vega's decision on the part of your client, Mr. Parrocha, and Mr. Selph?

MR. PARROCHA: Yes, Judge.

THE COURT: Okay. They're all proceeding to trial. I will not accept any pleas from this point forward unless they are open pleas.

And the jury is on their way over. . . .

The court conducted *voir dire* until the lunch recess. After the recess, Tull and his two co-defendants entered guilty pleas.

Tull contends that despite the state trial court's announcement that all three defendants were present during the above proceeding, he was not actually present and was therefore unaware of the court's statement that going forward it would only accept

an open plea. Tull claims that he did not know of this development until "later," when he had "further discussions" with his attorney before entering his plea. (Doc. 15 at 10) Tull contends that counsel was ineffective in not keeping him apprised of this change in the status of plea negotiations and not correcting the record to reflect his absence.

As an initial matter, Tull's claim involves a pre-plea allegation of ineffective assistance, and he has not asserted that counsel's alleged error affected the voluntary nature of the plea he ultimately entered. Accordingly, this claim is waived by the entry of Tull's plea. *See Tollett*, 411 U.S. at 267. Alternatively, even if the claim is construed as involving the voluntary nature of Tull's plea and thus is not waived, Tull cannot obtain federal habeas relief.

The state court conducted an evidentiary hearing on Tull's claim. Tull testified that on the morning of trial, Lopez told him of the State's offer of 10 years followed by five years of probation. (Doc. 11 Ex. 18 at 7) Tull testified that he told Lopez that he needed time to think about it. (Doc. 11 Ex. 18 at 8) Tull testified that he was taken out of the courtroom, and when he re-entered after changing his clothes, the prospective jurors were brought out. (Doc. 11 Ex. 18 at 8-10) Tull testified that, after lunch, he decided he wanted to accept the 10-year offer, which he believed was still available. (Doc. 11 Ex. 18 at 12) Tull testified that he did not recall the judge saying in open court that the offer was no longer available, and that he did not find out the offer was "off the table" until after the lunch recess. (Doc. 11 Ex. 18 at 12-14)

Trial counsel Walter Lopez testified that on the morning of trial, Tull still had the opportunity to accept the State's plea offer of 10 years in prison followed by five

20

years of probation if he agreed to testify truthfully against his co-defendants, but Tull rejected that offer. (Doc. 11 Ex. 18 at 23) Lopez testified that Tull told him prior to changing his clothes and starting jury selection that Tull wanted to go to trial. (Doc. 11 Ex. 18 at 28) Lopez testified that Tull was present in the courtroom when the judge told the defendants and their attorneys that the judge would only accept open pleas. (Doc. 11 Ex. 18 at 24) Lopez recalled that after about an hour and a half of jury selection, Tull said that he wanted to change his plea and take the earlier offer. (Doc. 11 Ex. 18 at 24-25, 31)

In its order, the state court detailed the evidentiary hearing testimony and concluded (Doc. 11 Ex. 19 at 11-12):

> After reviewing the allegations, the testimony, evidence, and arguments presented at the November 19, 2014, evidentiary hearing, the court files, and the record, the Court finds Mr. Lopez's testimony to be more credible than that of Defendant. Therefore, the Court finds Mr. Lopez did not place on the record that Defendant was not present in the courtroom when the Court stated, "[a]ll three defendants are present, Hommy Rodriguez-Santana, Ricardo Tull and Onix Vega and their counsel," because Defendant was present at the time. The Court further finds Mr. Lopez did not convey to Defendant that he had to accept the State's ten years' prison offer at that moment or it was off the table, thereby leaving an open plea the only remaining option, because Defendant was present in the courtroom when the Court advised Defendant of such. The Court finds prior to jury selection and being escorted back to the holding cell to change his clothes, Defendant rejected the State's offer. Consequently, the Court finds Defendant cannot prove that Mr. Lopez acted deficiently or any resulting prejudice when Defendant rejected the State's offer prior to being escorted back to the holding cell to change his clothes, even though the Court advised him in open court of the change of plea status, including that the Court had removed the State's offer and was only going to accept open plea offers from then on. As such, no relief is warranted upon claim two.

21

The state court's finding that Lopez's testimony was more credible than Tull's testimony is a factual finding. *See Consalvo v. Sec'y, Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("We consider questions about the credibility and demeanor of a witness to be questions of fact."); *Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) (stating that a state court's credibility finding is a finding of fact). This factual finding is afforded a presumption of correctness that can be rebutted only by clear and convincing evidence. *See Rolling*, 438 F.3d at 1301; 28 U.S.C. § 2254(e)(1) (providing that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Tull has not rebutted, by clear and convincing evidence, the presumption of correctness afforded to the state court's credibility determination. Based on the testimony the state court found credible, the state court made additional factual findings that Tull rejected the State's plea offer before he changed his clothes and that Tull was present in the courtroom when the state trial court announced it would only accept an open plea. Tull has not come forward with clear and convincing evidence rebutting the presumption of correctness afforded to these further factual findings.

Tull does not meet his burden of showing that the state court's decision was unreasonable. Tull rejected the State's plea offer after discussing it with counsel, and was present when the state trial court announced a change in the status of plea discussions by stating that any plea from that point on would be an open plea. Accordingly, Tull fails to show that the state court unreasonably found that counsel

was not ineffective for failing to inform him of this development or for failing to correct the record to reflect his absence. Because Tull has not established that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground Three.

## V.    Ground Four

Tull argues that he is entitled to relief based on the cumulative effect of counsel's alleged errors. The state court rejected the cumulative error argument upon denying claim one of the postconviction motion. The state court found that "because claim one has been summarily denied and claim two is the only remaining claim, Defendant's cumulative error claim must fail." (Doc. 11 Ex. 17 at 10) Tull does not show that the state court's ruling was unreasonable. Because only one postconviction claim remained for resolution, no cumulative prejudicial effect could result. Tull has not shown entitlement to relief on any individual claim; therefore, relief is not warranted on a cumulative error claim. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (stating that when none of the individual claims of error have merit, "we have nothing to accumulate."); *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."). Tull is not entitled to federal habeas relief on Ground Four.

Accordingly, it is **ORDERED** that Tull's amended petition (Doc. 15) is **DENIED**. The **CLERK** is directed to enter judgment against Tull and to **CLOSE** this case.

## CERTIFICATE OF APPEALABILITY
## AND
## LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

**IT IS FURTHER ORDERED** that Tull is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S. § 2253(c)(1). The district court or the circuit court of appeals must first issue a certificate of appealability. Section 2253(c)(2) limits issuing a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Tull must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to make this showing, Tull is not entitled to a certificate of appealability. Therefore, he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Tull must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on this 11th day of March, 2024.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE